IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| v. | : | DATE FILED: _____ |
| | : | VIOLATIONS: |
| TASHIKA WHITE | | 18 U.S.C. § 1341 (mail fraud – 1 count) |
| | : | 18 U.S.C. § 641 (theft of public money – 1 count) |
| | : | Notice of forfeiture |

**INDICTMENT**

**COUNT ONE**

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

**INTRODUCTION**

1. On March 13, 2020, the President declared the ongoing COVID-19 pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

2. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was signed into law. The CARES Act created the PUA (Pandemic Unemployment Assistance) program, which provided unemployment benefits to individuals not eligible for regular unemployment compensation or extended unemployment benefits.

3. The PUA program was administered by the various states, including the Commonwealth of Pennsylvania, but its benefits were funded by the federal government. In Pennsylvania, the Pennsylvania Department of Labor and Industry (PA DLI) administered the

PUA program, on behalf of the United States Department of Labor, which was responsible for overseeing the PUA program.

4. PA DLI required that a PUA claim be made online via the PUA website, https://pua.benefits.uc.pa.gov. The applicant was required to enter personal identification information (PII), including name, date of birth, social security number, email address, telephone number, and a physical address. An applicant was also required to answer a series of questions that enabled the PA DLI to determine the applicant's eligibility and payment amount. Once awarded PUA benefits, the applicant was required to submit weekly certifications showing continuing eligibility. PA DLI required that the application for PUA benefits as well as the weekly certifications be made online.

5. While each state administered its own PUA program, the application used by each state was a standard online application form. The form consisted of 27 different sections including a range of questions within each section. Some of the questions asked for the applicant's PII and biographical information, while other questions dealt with the applicant's eligibility for the program and work history. An applicant was required to provide their current employment status and answer if they were able to accept a job if offered. If the applicant was unable to accept a job, the applicant was required to provide a reason for not being able to accept a job.

6. The applicant was also required to disclose if they were unemployed as a result of a pandemic or major disaster. If the applicant's employment had not been affected as a result of a pandemic or major disaster, the applicant was not eligible for PUA benefits. If the applicant's employment had been affected by a pandemic or major disaster, the application was

required to note in which state the applicant was affected by the pandemic or major disaster and the nature of the pandemic or major disaster.

7. In the 'self-certification' section of the application, the applicant was required to answer questions regarding the nature and impact of a pandemic or major disaster on the applicant's employment status. First, the applicant was required to disclose the pandemic or major disaster which affected the applicant's employment. An applicant was only eligible to receive weekly PUA benefits if the applicant was unemployed for reasons related to the COVID-19 pandemic. Second, the applicant was required to disclose the date of the applicant's last day of work. Finally, if the applicant quit their job due to COVID-19, the applicant was required to supply a reason for quitting.

8. As to all of these preceding questions, the applicant was required to "acknowledge that I understand that making the certification is under penalty of perjury and intentional misrepresentation in self-certifying that I may fall in one or more of these categories is fraud."

9. The applicant was also required to complete another certification, under penalty of perjury, that if offered a job, the applicant would be able to accept it. An applicant was required to read and understand the PUA Compensation Handbook, which stated that any earnings must be reported for each week a person works. The applicant was also required to certify once again as to the application that "all information is true and complete" and that if the applicant provided false information the applicant could be subject to criminal prosecution.

10. If PA DLI or another state's administrative agency approved an application

for PUA benefits, the applicant was then eligible to receive benefits in the form of checks, electronic fund transfers, or debit cards, and the checks and debit cards were mailed via the United States Postal Service to the physical address that appeared on the application. When a state agency approved an applicant's eligibility, the agency established the applicant's period of benefits, amount of weekly benefit, and maximum total benefit amount. However, even after this occurred, the applicant was not able to receive the benefits unless the applicant performed the appropriate weekly certifications.

11. The recipient of PUA benefits received a unique applicant number that corresponded to the applicant's initial application and weekly certifications. Payments for PUA were based on a seven-day period, from Sunday through Saturday. Thus, the benefits recipient was required to certify every seven days that he or she: a) was ready, willing and able to work each day; b) was seeking full time employment; c) did not refuse any job offers or referrals; and d) had reported any employment during the week and the gross pay or other payments received. The weekly certification was required to be completed in a timely manner. A delay in the weekly certification could result in a delay or denial of further payments.

12. Defendant TASHIKA WHITE was employed as a civilian dispatcher by the Philadelphia Police Department ("PPD").

## THE SCHEME TO DEFRAUD

13. From on or about August 10, 2020 to on or about August 29, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TASHIKA WHITE**

devised and intended to devise a scheme to defraud state and federal agencies, and to obtain money and property, specifically PUA benefits, by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

It was part of the scheme that:

14. On August 10, 2020, defendant TAKISHA WHITE submitted a PUA application in the state of Pennsylvania. On the application, defendant WHITE stated that she was working full time, but had lost her job due to the COVID-19 pandemic. WHITE also stated that her last day of work was on August 10, 2020. These statements were false as defendant WHITE did not lose her job on August 10, 2020 due to the COVID-19 pandemic and continued to be employed by the PPD thereafter.

15. After she was approved for PUA benefits, defendant TAKISHA WHITE submitted weekly certifications to the PUA website certifying that she was ready and able to accept a job if offered. As part of these weekly certifications, defendant WHITE also certified that she was not working. From on or around December 18, 2020 until August 29, 2021, defendant WHITE submitted 54 weekly certifications for the work weeks ending August 22, 2020 to August 28, 2021. For 46 of those work weeks, defendant WHITE represented she earned no income. For 8 of those work weeks, defendant WHITE only reported a small portion of her earnings. Defendant WHITE's

weekly certifications for this period were false as defendant WHITE was employed by the PPD and receiving income from her employment in excess of any amount she reported.

16. As a result of her false application and weekly certifications, defendant WHITE obtained $10,152 in PUA benefits.

## THE MAILING

17. The benefits tied to defendant WHITE's application and weekly certifications were loaded onto a US Bank debit card. This card was mailed to the address on the application, on North 53rd Street, Philadelphia, Pennsylvania.

18. On or about August 12, 2020, in the Eastern District of Pennsylvania, and elsewhere, having devised and intending to devise this scheme described above, the defendant,

**TASHIKA WHITE,**

for the purpose of executing the scheme, knowingly caused to be delivered by United States mail, according to the directions thereon, a US Bank debit card mailed from Shoreview, Minnesota or Indianapolis, Indiana, addressed to Tashika White at North 53rd Street, Philadelphia, Pennsylvania.

In violation of Title 18, United States Code, Section 1341.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times relevant to this indictment:

1. The allegations in paragraphs 1 through 12 and 14 through 17 of Count One are incorporated herein.

2. From on or about August 10, 2020, to on or about August 29, 2021 in the Eastern District of Pennsylvania, and elsewhere, defendant

**TASHIKA WHITE**

did knowingly steal and convert to her use or the use of another money or a thing of value of the United States, specifically, Pandemic Unemployment Assistance funds under the care of the United States Department of Labor, in a value exceeding $1,000.

In violation of Title 18, United States Code, Section 641.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     As a result of the violations of Title 18, United States Code, Sections 641 and 1341 as set forth in this indictment, defendant

**TASHIKA WHITE**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of $10,152.

      2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the Court;

      (d)     has been substantially diminished in value; or

      (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c) incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

_____
**GRAND JURY FOREPERSON**

*Ronald Sarachan* for

_____
**JENNIFER ARBITTIER WILLIAMS
ACTING UNITED STATES ATTORNEY**

9

No. _ _ _ _ _ _ _ _

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

<u>Criminal Division</u>

### THE UNITED STATES OF AMERICA

vs.

Tashika White

### INDICTMENT

Counts

18 U.S.C. § 1341, (mail fraud) 1 Count and 18 U.S.C. § 641 (theft of public money) 1 Count



Filed in open court this _____ day,

of _____ A.D. 20____

_____
Clerk

Bail, $ _____